### J. Timothy Clifford *vs.* Dalton-Ingersoll Manufacturing Company.

Plymouth.    March 10, 1913. — April 1, 1913.

Present: Rugg, C. J., Hammond, Loring, Sheldon, & De Courcy, JJ.

*Bankruptcy*, Fraudulent preference.

In an action of tort by a trustee in bankruptcy to recover the amount of a mortgage of personal property alleged to have been made by the bankrupt to the defendant as a fraudulent preference, where a finding was warranted that the bankrupt was insolvent when he made the mortgage and that the defendant had reasonable cause to know it, but the defendant contended that the property covered by the mortgage afterwards had come into the possession of the plaintiff, it appeared that the plaintiff had received the property after it had been diminished by a sale of a part of it and that the portion which he did receive came to him subject to certain claims that he subsequently settled. *Held*, that it could not be ruled as matter of law that the plaintiff had received the property claimed by him from the defendant, and therefore that the plaintiff was entitled to have the case submitted to the jury.

In an action of tort by a trustee in bankruptcy to recover the amount of a mortgage of real estate alleged to have been assigned by the bankrupt to the defendant as a fraudulent preference, where the defendant contended that the bankrupt had assigned the mortgage in immediate payment for goods sold and delivered and not in satisfaction of a pre-existing debt, there was evidence that the goods, the price of which furnished the consideration for the assignment, had been bought by the bankrupt and shipped to him by the defendant at least three days before the assignment was made, and it could have been found that the assignment was given, not in present payment for the goods, but only to secure the existing liability created by their purchase and sale. *Held*, that the question whether the assignment was given to the defendant as a fraudulent preference was for the jury.

Tort, by the trustee in bankruptcy of the estate of C. Richard Anderson, with two counts, each to recover the amount of an alleged fraudulent preference made by the bankrupt to the defendant, within four months of the filing of an involuntary petition in bankruptcy against him by certain of his creditors, in violation of the bankruptcy act of 1898, § 60 b, the first count alleging the making of a mortgage to one Lane, acting as the agent of the defendant and for its benefit, covering all the stock in trade, fixtures and other personal property of the bankrupt, and the second count alleging a fraudulent transfer to the defendant of a promissory

note for $200 secured by a second mortgage of real estate given by one Rosval. Writ dated September 16, 1910.

In the Superior Court the case was tried before *Brown,* J. Among other things, it appeared that the defendant foreclosed the mortgage of Lane by a sale at public auction, and that the purchaser was one Fatales, who bid the sum of $425. Owens, mentioned in the opinion, was the holder of a prior mortgage on the same property. The foreclosure sale was on July 2, 1909. There was evidence that Fatales had had previous dealings with Anderson and knew of his embarrassed financial condition at the time of the sale, and that he made the bid by which he purchased the property in accordance with a prearrangement with the defendant.

On July 14, 1909, certain creditors of Anderson filed an involuntary petition against him in bankruptcy, and on or about July 17, 1909, the plaintiff was appointed receiver in bankruptcy of Anderson's estate. On the same day, acting under an order from the bankruptcy court and by agreement of counsel for Anderson, Owens, Fatales and the petitioning creditors, the plaintiff took possession of the personal property then held by Fatales by virtue of the foreclosure sale. A part of the agreement of counsel was that the property should at once be appraised under the directions of the court, and that it then might be sold by the receiver, who should thereupon hold the proceeds in place thereof and subject to the liens and legal claims, if any, of Owens and of Fatales. All of this was done. The personal property was appraised by three appraisers, who were appointed on July 24, 1909, and made their appraisal on July 29, 1909. They appraised the property at $2,208.78 and a private sale was made by the receiver for seventy-five per cent of this amount. The evidence tended to show that between the date of the foreclosure sale, on July 2, and the date of the plaintiff's taking possession Fatales had sold articles to the value of $245, but no more.

Anderson was adjudged a bankrupt on August 2, 1909, and the plaintiff was appointed his trustee on August 24, 1909, taking over to himself, as such, the property which he previously had held as receiver. It appeared that he subsequently made a settlement with both Owens and Fatales on account of their respective claims to the funds in his possession resulting from the sale of

the personal property. What these settlements were was not in evidence. It did appear, however, that the defendant was not a party thereto and had no formal notice thereof.

The claims proved and allowed against Anderson's bankrupt estate were certified by the referee as $62.25 entitled to a preference and $4,031 held by general creditors, in addition to which there were pending, but not allowed at the time of the trial, claims of about $500. One of the claims proved and allowed was that of Hilmar Rosval, the maker of the $200 real estate mortgage. The amount of this claim was $100. The money due upon the Rosval mortgage itself was collected in full by the defendant on or about January 11, 1910. Other facts relating to the second count of the declaration are stated in the opinion.

It was stated in the report to this court that " on all the evidence the jury would have been warranted in finding that Anderson was insolvent when he gave both the mortgages described in the two counts of the plaintiff's declaration, and that the defendant knew, or had reasonable cause to know, that he was insolvent."

The defendant contended, in regard to the first count of the declaration, that the personal property covered by the mortgage there described came into the possession of the plaintiff and was sold by him and that he received the proceeds; and, in regard to the second count, the defendant contended that the Rosval mortgage was assigned to it for a present consideration, namely, the price of goods worth a little more than the amount of that mortgage which were sold to Anderson within three days of the time when he transferred that mortgage to the defendant.

At the close of the evidence the judge ordered a verdict for the defendant on each of the counts of the declaration, and reported the case for determination by this court. If the ordering of the verdict on the first count was wrong, judgment was to be entered for the plaintiff on that count in the sum of $250. If the ordering of the verdict on the second count was wrong, judgment was to be entered for the plaintiff on that count in the sum of $100.

The case was submitted on briefs.

*R. W. Nutter & W. M. Wilbar,* for the plaintiff.

*J. E. Eaton, E. T. McKnight & S. W. C. Downey,* for the defendant.

SHELDON, J. Under the first count there was evidence which

would have justified a finding for the plaintiff, unless his recovery is prevented by the fact that the personal property which had been mortgaged by Anderson to the defendant, or its proceeds, came afterwards into the possession of the plaintiff. But it did not all come into the hands or possession of the plaintiff. Fatales, who had bought the property at the foreclosure sale made by the defendant, had himself sold articles therefrom to the value of $245 and what came to the plaintiff was of course diminished to that extent. And the portion of the property which the plaintiff did receive came to him subject to the claims, not only of the prior mortgagee, but also of Fatales, who claimed under the defendant's mortgage, and the plaintiff subsequently made settlements of both these claims, the terms of which did not appear. It is not material upon the question of liability that the property may have been subject to a prior mortgage held by Owens. Manifestly the judge could not rule as matter of law that this defense was made out. The issues under the first count should have been left to the jury.

The jury could have found that the plaintiff was entitled to recover under his second count, unless it appeared that Anderson's assignment of the Rosval mortgage to the defendant was for a present consideration. But this was not conclusively shown, although undoubtedly the jury might have so found. There was evidence that the goods, the price of which furnished the consideration for this assignment, had been bought by Anderson and shipped to him by the defendant at least three days before the assignment was made. The jury could have found that the assignment was given, not upon the present consideration of this purchase and sale, but only to secure the already existing liability created by the purchase and sale. The issues under the second count should have been left to the jury.

Under the terms of the report, judgment must be entered for the plaintiff for $250 upon the first count and $100 upon the second count, — that is, for the total sum of $350.

*So ordered.*